IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

MICKEY MASON #K04336
    Plaintiff

    V.

Donald Terry, et, al
    Defendant(s)

Case No. 22-cv-3252

Hon. Steven C. Seeger

F I L E D

JAN 14 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## PLAINTIFF MICKEY MASON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

## INTRODUCTION

This action was brought by Plaintiff MICKEY MASON to vindicate serious deprivations of his constitutional rights and deliberate indifference towards Plaintiff conditions of confinement. By Defendant Donald Terry, and 1st shift/ 2nd shift John Doe(s) that was refused to be turned over by Donald Terry to protect his IDOC employees so they can't be held liable in violation of Plaintiff's Due Process, and ignored Court Order. (See Docket Entry July 9, 2024)

While housed at Sheridan Correctional Center, Plaintiff was forced to be housed in C 13 B Hall cell 23 (Filthy Cell) with a broken light, broken toilet with urine/feces forced to inhale toxic waste and try to eat food under those conditions, denied cleaning supplies, and to be able to shower everyday during a 14 day Quarantine/deadly Pandemic.

Numerous of 1st shift/2nd shift Defendant(s)/John Doe(s) were notified of the offending conditions and turned a blind eye, As well as Defendant Donald Terry who was notified threw letter/Notice dated October 9, 2021, And verbally when he came to C 13 B Hall October 15, 2021 due to Plaintiff And others going on Hunger Strike.

Yet, Defendant Donald Terry Motion should be denied due to Plaintiff's itemize list of misleading this Court, And submitting false information. (1) Defendant Donald Terry ignored this Court Order dated July 9, 2024 to provide Plaintiff with 1st and 2nd shift Roster Management so John Doe(s) can be identified. Defendant Donald Terry hindered Plaintiff from Amending his Complaint with John Doe(s) (that this Court granted), and did not send 1st shift 7am to 3pm Roster Management And only 2nd shift with everything redacted. (See Exhibit A)

(2) Defendant/Counsel lied at Hearings dated 8/31/2023, And 8/30/2023 stating Camera video footage is destroyed After 30 days by Illinois Department of Corrections, Which conflicts with 730 ILCS 5/3-2-2, 05.01.104 Administrative Directive that clearly states "Digital media shall be retained for two years Provided no litigation is pending or Anticipated. (See Attached Exhibit B page 2 of 4 bottom page 1.) And,

(3) The Artificial hand written work order provided by Defendant Donald Terry does not reflect All of the reported malfunctions of the cell, and was not the proper form/ work order provided under law. Defendant Donald Terry intentionally did not provide the proper work order in an attempt threw his creation of said artificial work order to exclude any work reported and completed relating to Plaintiff said cell, relating to this action.

Not to mention this Court issued A Summons dated 11/03/2022 for Defendant Physician- "OJ" to be served by U.S Marshal's, in which Defendant Donald Terry and Sheridan Correctional Center claimed there was no Physician named "OJ" at Sheridan Correctional Center. Note: ( See Attached Exhibit C " Sheridan C.C Health Care Unit Treatment Sheet dated 10/14/2021 Physician Order "OJ" location C 13")

Again, due to Defendants/ Donald Terry's actions, why would this Court believe Anything from Defendant/ 4 different Counsels who been muddy the waters.

730 ILCS 5/3-2-2, and 03.02.108 "Standards of Conduct" for All IDOC employees clearly states "Any employee shall not Knowingly submit false or misleading information in any verbal or written report. Employees will not Alter or destroy Any official reports, records or evidence with the intent to mislead, conceal or falsify. Employees will not withhold any official reports, records or evidence from the proper authorities. Reports by employees shall contain All Available pertinent information. Intentionally falsifying or causing falsification of any institutional records may result in the initiation of Disciplinary Action including discharge".

## PLAINTIFF'S RESPONSES TO DEFENDANT STATEMENT OF UNDISPUTED MATERIAL FACTS

Undisputed for purposes of summary judgement.

For the reasons set forth in Plaintiff's statement of Material Facts and Argument section below, Plaintiff disputes Defendant Terry's Statement of Undisputed Facts, Summary Judgment, and assertion that Plaintiff has wholly failed to provide evidenze sufficient to support his Conditions of Confinement Claim.

## STATEMENT OF MATERIAL FACTS

(1) Plaintiff has a constitutional right to Due Process that's associated with IDOC Department Rules and Administrative Directives regarding Conditions of Confinement.

Plaintiff notified Warden Donald Terry, and Warden Sherwin Miles threw letter/Notice dated October 9, 2021 that was placed in an institutional locked Box concerning the inhumane Conditions of Confinement. Defendant Donald Terry was notified verbally about Conditions of Confinement, which in Emergency Grievance dated October 18, 2021 states camera footage reflects that Warden Donald Terry was notified October 15, 2021.

Also the Declaration of D'Amontae Jackson on page 3 of 5 #'s 12-14 clearly stated " Due to staff and officials ignoring my emergency

issues by placing my health and safety at risk, I went on a "Hunger Strike" until I was able to notify Warden Donald Terry about emergency issues due to his staff ignoring our emergency issues. After notifying Warden Donald Terry about emergency issues, he stated "Just come off Hunger Strike, and I'll make sure everything get taken care of". Me and other individuals in custody came off Hunger Strike, and it got worse the continuing months while housed at this facility". (See Declaration of De'Amontae Jackson)

2. Defendant Donald Terry and Counsel forgot they they admitted that Plaintiff was able to speak with him within a few days of his request, when they were trying to get Plaintiff to settle both cases for ($1,200.00) that's in front of this Court. This evidence shows this Court that it conflicts with Defendant Donald Terry Declaration dated 10/9/2024 under penalty of Perjury, and the "Undisputed Material Facts by Defendant/Counsel.

It clearly stated in letter to Plaintiffs prior Attorney Jason M. Rosenthal on page 3 of 3 second para that "All complaints were addressed in a reasonable time frame and Plaintiff was able to speak to the Warden within a few days of his request to do so". (See Letter to Attorney Jason M. Rosenthal)

3. Donald Terry, Sherwin Miles, and 1st-Shift/2nd shift John Doe(s) was aware of the inhumane conditions of confinement that Plaintiff was forced to be housed in due to the cell was suppose to be searched/checked before Plaintiff was placed in there. Also, if the content of Prisoner's grievances, letters, notices, verbal notices is sufficent to inform an Administrative Official of serious constitutional issues, an Administrator [Donald Terry, Sherwin Miles] whom did not take appropriate action open themselfs up to potential liability under the Fourteenth Amendment for deliberate indifference including Correctional staff members.

Farmer v. Breman, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed 2.d 811 (1994), clearly states that "Inmates must be provided with Adequate Food, Clothing, Shelter, and Medical Care, and Prison Officials must take reasonable measures to guarantee the safety of the individual in custody"

Plaintiff argues that it clearly states in Carter V. Smith, 2009 WL 3088458 At *6 (E.D.P.A Sept 23, 2009) ("Where A Grievance Alleges ongoing constitutional violation A Supervisory Defendant who reviews it is personally involved in that violation because he is confronted with A situation he can remedy directly"). Case Law establish that for convicted inmates, the Cruel and Unusual Punishment Clause of the Eighth Amendment imposes A duty on Prison officials to provide "humane Conditions of Confinement."

Plaintiff was forced to inhale toxic waste for 24 hours 6 straight days, Along with trying to eat his food that only came to the cell due to the 14 day Quarantine in A nasty cell with no cleaning supplies. A reasonable jury could infer that 1st Shift, 2nd Shift John Does) that Defendant Donald Terry refused to turn over who worked in C 13 B Hall would have Known About the conditions of C 13 B Hall due to John Does conduct tours As staggered intervals of each Assigned wing At least once every 30 minutes. Even Donald Terry turned A blind eye and ignored Plaintiffs letter/notice, and verbal Complaint.

A inmates correspondence to A Prison Administrator may establish A basis for personal liability under 8 1983 where that correspondence provides sufficient Knowledge of A "Constitutional

Deprivation" Perez, 752 F.3d at 781-782 (citing Vance v. Peters, 97 F.3d 987, 993 (7th Cir. 1996) stating "Prisoner Officials Knowledge of Prison Conditions learned from an inmates communication can under some circumstances constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and if necessary to rectify the offending condition")

4. Plaintiff went on a Hunger Strike due to being ignored by Defendant(s) John Does, and Defendant Donald Terry as well as Warden Sherwin Miles. Defendant Physician "OJ" who came to C13 housing unit to check Plaintiff's vitals and etc was notified about the inhumane conditions of confinement as well, who Defendant Donald Terry and Sheridan Correctional Center stated did not work there, ignored Plaintiff as well. The effects that C13 B Hall cell 23 had on Plaintiff are;

(1) it was hard to breath due to inhaling toxic waste that was in the broken toilet for 24 hours, and trying to eat food that came to the cell due to there was no dayroom, nor walking to chow due to the 14 day Quarantine. [This happened 6 days straight for 24 hours]

(2) Plaintiff had to hold his urine/feces alot due to the broken toilet and no access to the dayroom toilet that John Doe only let Plaintiff use one time out of the 6 days, which is a danger to his health and safety.

(3) The cell was nasty with a broken light, rat feces, spiders, black dusk, spider webs and no cleaning supplies for Plaintiff to be able to clean up due to the deliberate indifference of John Does,

Warden Sherwin Miles, and Defendant Donald Terry. The shower was nasty as well and Plaintiff was denied to even shower every day to be able to clean his body during a ~~dead~~ deadly pandemic.

Plaintiff's inability to be able to clean his body heavyly contributed to him contracting Covid 19, that because Covid 19 can be contracted by touching anything, and that can cause your body to contract the same.

Plaintiff suffered from Mental Anguish, Sleep Deprivation, Stress, headaches, stomach aches, and sporadic appetite while being forced to live in them conditions. Defendant Donald Terry was aware that Illinois Department of Corrections 730 ILCS 5/3-2-2 clearly states " The Assistant Warden of Operations shall ensure that each living area is searched no less than one time every 60 days, and prior to occupancy by a new offender; an unoccupied living area shall be searched". John Does and Donald Terry Knew the cells were in humane as well as Warden Sherwin Miles.

In Vinning-El v. Long, 482 F.3d 923 it clearly states "We agree with their concession since it was clearly established well before 2001 that the conditions Vinning-El describes, if true, deprived him of the "minimal civilized measure of life's necessities." See Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

Any number of opinions overturning grants of summary judgment and remanding for trial on similar allegations confirm this proposition. See, eg., Johnson v. Pelker, 891 F.2d 136, 139-40 (7th Cir. 1989) (prisoner held for three days in segregation cell allegedely smeared with human feces and having no running water); Jackson v. Duckworth, 955 F.2d 21, 22

(7th Cir. 1993) (Prisoner held in cell that allegedly was filthy and smelled of human waste, lacked adequate heating, contained dirty bedding, and had "rusted out" toilet, no toilet paper, and black worms in the drinking water); Isby v. Clark, 100 F.3d 502, 505-06 (7th Cir. 1996) (Prisoner held in segregation cell that was filthy, with dried blood, feces, urine and food on the walls"); See also Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006) (explaining that prisons must provide "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities" (quotation marks and citation omitted)); Despain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) (concluding that exposure to human waste, even for 36 hours, would constitute sufficiently serious deprivation to violate Eighth Amendment).

5. The Eighth Amendment prohibits unnecessary and wanton infliction of pain, thus forbidding punishment that is "totally without penological justification that it results in gratuitous infliction of suffering." Gregg v. Georgia, 428 U.S. 153, 173, 183, 96 S.Ct. 2909 (1776).

Such gratuitous infliction of pain always violates the contemporary standards of decency and need not produce serious injury in order to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992). Moreover, physical injury need not result for the punishment to state a cause of action, for the wanton infliction of psychological pain is also prohibited. Id. Hudson, at 16.; Also see Delaney v. Detella, 256 F.3d 679, 685, (7th Cir. 2001); And Calhoun v. Detella, 319 F.3d 936 (7th Cir. 2003).

Many things - beating with a rubber truncheon, water torture, electric shock, incessant noise, reruns of "Space 1999" - may cause agony as they occur yet leave no enduring injury. The state is not free to inflict such pains without cause just so long as it is careful to leave no marks. Cf. Lewis V. Lane, 816 F.2d 1165, 1171 (7th Cir. 1987).

Accordingly, the United States Supreme Court has held that it is incumbent on an incarcerating body to provide individual inmates with a healthy enviroment; necessary corollary to this is that a state must provide "... Prison conditions that does not cause an inmates degeneration or threaten his mental or physical well-being." Bell V. Wolfish, 441 U.S. 520, 99 S.ct. 1861,

6. There's no excuse for Defendant Donald Terry, Sherwin Miles, and John Doe(s) due to the facts that ILCS 5/3-2-2, and 03.02.108 "Standards of Conduct" for ALL IDOC employees clearly states "All employees are responsible for keeping informed of and understanding ALL current institutional directives, departmental directives, and departmental rules. ALL employees are responsible for reading and complying with all posted memoranda, bulletins, directives, and department rules issued by proper Authories."

So when Illinois Department of Corrections IDOC employees/Defendants go outside of ILCS 5/3-2-2, and 03.02.108 "Standards of Conduct" when ALL employees/Defendants are responsible for keeping informed of, and understanding the above then the intent can be proven in Criminal and Civil that Plaintiff's constitutional rights were violated.

Which is what Defendant Donald Terry, Defendant John Does, and Warden Sherwin Miles did. Donald Terry was not a "Senior Public Administrator Operations Warden" at Sheridan during the time line of Plaintiff's claims that's provided with evidence.

Defendant Donald Terry was just a "Warden of Operations" Which clearly states "Has the responsibility and authority to manage and direct the departments depicted above generally related to the day to day operations of the facility". (See Exhibit D Attached to Plaintiff's Object to Defendant's Statement of Undisputed Material Facts)

Donald Terry, John Does, and Sherwin Miles was also aware that 730 Illinois Compiled Status 5/3-3-3, and 730 ILCS 5/3-7-2 (A) that clearly state "All institutions and facilities of Department Shall provide every committed person with access to toilet" Above had Knowledge of MASON's Constitutional Violations concerning the inhumane conditions of confinement, but disregarded the substantial risk of serious harm to Mason when Letters/Notice, verbal notices, and Grievance was ignored. Prisoner's need not file multiple grievance when they are complaining about ongoing prison policies; rather a grievance may be sufficient when it provides the Authorities with notice and a chance to correct the violation id; Kaba v. Stepp 459, F.3d 678, 684 (7th Cir. 2006). In other words, Prisoner request for relief that fall on 'deaf ears' may evidence deliberate indifference. Perez, 792, F.3d at 782.

7. Defendant Donald Terry and Warden Sherwin Miles continued to be deliberately indifferent to Plaintiff's Conditions of Confinement which continued After Plaintiff's 14 day Quarantine was over October 20, 2021 and Plaintiff contracted Covid-19. While housed at Sheridan Correctional Center, Plaintiff continued to be denied cleaning supplies, denied to shower every day, denied to buy laundry detergent to wash clothes in which all helps to kill germs and not contract Covid-19.

The intentional acts and deliberate indifferences to Mason's inhumane conditions of confinement is atypical and significant hardship on Plaintiff in relation to the ordinary incidents of Prison Life which started October 6, 2021 to January 8, 2022 when Plaintiff Contracted Covid-19. The Emergency Letter/Notice to Defendant Donald Terry & Warden Sherwin Miles dated October 9, 2021. The verbal notice dated October 15, 2022, and Grievance dated 11/1/2021 services as a notice of claim concerning Conditions of Confinement within a Penal institution under 705 ILCS 505/1, et seq, Hutto v. Finney, 437 U.S 678 (78) Sandin v. Conner, 515 U.S 472 95, et, al.

The Seventh Circuit has reconized that a continuing violation is a claim where among other things "the state actor has a policy or practice that brings with it a fresh violation each day." In the statute of limitations context, where a plaintiff raises a continuing violation, he can "reach back" to the beginning of the wrong even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separtely over every incident of defendant's unlawful conduct." See Heard v,

Sheahan 253, F. 3d 316, 319 (7th Cir. 2001).

Violations began and continue, and the prevailing rule treat new acts, or ongoing inaction, as new violations. The Eighth Amendment creates such a doctrine: failure to treat a significant painful medical condition, with deliberate indifference to the prisoner's situation is a form of inaction that offends the Constitution.

Estelle v. Gamble, 429 U.S. 97 Sict 285, 50 L.Ed 2d 251 (1976).

Plaintiff's fanciful statement of Facts, Overwhelming Evidence, and Defendant Donald Terry admission of talking to Plaintiff on October 15, 2021 when Defendant/Counsel tried to get Plaintiff to settle, is all Plaintiff needs to prove the inhumane conditions of confinement, and Deliberate Indifference to Plaintiff's notices/Letters, verbal complaints, Emergency Grievances, and Camera Footage to support Plaintiff's allegations that Defendant lied about.

Defendant Donald Terry; prevented and impeded Plaintiff from Adding John Does/Amending his Complaint intentionally, refused to provide plaintiff with targeted Request For Production due to Knowing evidence was unfavorable that he posses and control denying Plaintiffs Due Process to prepare his defense, lied at Hearings about Illinois Department of Corrections destroying Camera Footage after 30 days due to it being unfavorable and support Plaintiff's claims, submitted a false hand written unlawful (contrary To Illinois Law) "Work Order" which fails to show the dates inoperable toilet on purpose that clearly donot show the dates, and lied about Defendant Physican "05" working at Sheridan Correctional

Center which this Court dismissed Physician "OJ" from this Pending Case due to being intentionally mislead by Defendant Donald Terry, and Sheridan Correctional Center making a Mockery out of this Court.

## CONCLUSION

A letter/notice, and Grievance suffices aswell as verbal communication alerts the prison to the nature of the wrong for which redress is sought. As a notice-pleading system, the grievant need not lay out the facts, Articulate legal theries, or demand particular relief. All the grievance need to do is object intelligibly to some asserted shortcoming. Id quoting Strong V. David 297, F.3d 646,650 (7th Cir. 2002). The First Notice to Defendant Donald Terry and Warden Sherwin Miles was October 9, 2021, which it clearly states in Orientation Manual that the "Assistant Warden of Operations can be contacted in writing" (See Exhibit P in Plaintiff Objects To Defendants Statement Of Unidisputed Material Facts), but Plaintiff was intentionally ignored.

Plaintiff has wholly provided overwhelming evidence sufficient to support his conditions of confinement claim due to Defendant continued to ignore Court Orders, mislead this Court, Provide false evidence, and denied Plaintiff's Request for Production due to evidence being unfavorable to Defendants As well As identifiable information so John Does could be served, and Defendant Physician "OJ". Because of these intentional Malicious Acts, Defendant is not entitled to Summary Judgment As to All of Plaintiff's claims.

WHEREFORE, for the above and foregoing reasons, Plaintiff respectfully request and pray that this Honorable Court; deny their Motion For Summary Judgement, Order Sanctions for Defendant/Counsel(s) intentionally misleading this Court numerous of times and ignoring Court Orders, Order A Default Judgement due to Defendant/Counsel intentional acts/making a mockery out of this Court, and let Plaintiff proceed to Amend his Complaint after Order to turn over everything Plaintiff requested, and Any other just and proper relief as this Court deem Just.

[Emergency Notice]

Due to Plaintiff being Pro Se, he is entitled to one copy of All documents that Plaintiff is being forced to send threw the mail due to being denied Law Library, and E filing Services at Lawrence Correctional Center. Plaintiff have sent Notices to this Court and Motions that was never filed nor returned that was sent threw the institutional mail here at Lawrence Correctional Center, that Plaintiff do not have copies of due to being denied to get copies As well. Also, mail from U.S. District Court is intentionall delayed 10 to 30 days due to Mailroom Supervisor claiming U.S District Court mail is not Legal mail so it's not a priority.

## DECLARATION

I declare under penalty of perjury that the forgoing is true and correct and that this declaration is executed the __5th__ day of January 2025

MICKEY MASON

MICKEY MASON

## CERTIFICATE OF SERVICE

I hereby certify that on January 5th 2025, the forgoing "Plaintiff MICKEY MASON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT" [16] pages with (8) pages of Attached Exhibits was placed in the Institutional mail requested to be sent Certified Mail at Lawrence Correctional Center, on January 5th 2025. To be sent to United States District Court Eastern Division 219 S. Dearborn Street Chicago IL 60604.

### Attached Exhibits(s)

(1) 1 page Redacted Illinois Department of Corrections "Roster Management"

(2) 4 page 730 ILCS 5/3-2-2, 05.01.104 Administrative Directive "Use, Security, And Storage of Camera, Digital Media and Related Equipment"

(3) 1 page Sheridan CC Health Care Unit Treatment Sheet

NOTE: Plaintiff respectfull request one copy of all documents that he is entitled to due to being Pro Se, and denied Law Library Access, and E filing system at Lawrence Correctional Center forced to send mail out with no copy of his Document(s).

# EXHIBIT
# (A)

I pAge Illinois Department of Corrections Roster
Management

Illinois Department of Corrections
**Roster Management**
Sheridan Correctional Center

Page : 2

Run Date :  September 28, 2021

Date : **October 6, 2021**
**Wednesday**
Shift : **15:00 - 23:00**

Approved : _____

Daily Roster

| Post # | Post Name | CP | Staff Name | Comments |
|---|---|---|---|---|
| 407 | TOWER 2 | ** | | |
| 412 | TOWER 3 | ** | | V |
| 417 | TOWER 4 | | | |
| 457 | INNER PERIMETER | | | |
| 490 | ESCORT | UOT | | evarez, Luis (7p-11p) 687 |
| 491 | ESCORT #2 | | | |
| 492 | ESCORT #3 | | | (5p-11p) 05 |
| 502 | C-3 CONTROL | | | (7p-11p) 855 |
| 510 | DIETARY OFFICER | | | |
| 620 | C-2 CONTROL | ** | | |
| 625 | C-2 WINGS | | | |
| 640 | C-4 CONTROL | UOT ** | | ma z, Anthony (7p-11p) 845 |
| 660 | C-6 CONTROL | LS ** | | 665 |
| 665 | C-6 WINGS | | | Hospital Admit AD |
| 680 | C-8 CONTROL | ** | | C-8 Watch AD |
| 683 | C-8 EAST WINGS | 15 | | |
| 685 | C-8 WEST WINGS | | | |
| 687 | C-8 BUILDING ASSISTANT | | | C |
| 690 | C-11 CONTROL | ** | | Hospital Admit AD |
| 695 | C-11 WINGS | | | |
| 700 | C-13 CONTROL | UOT ** | | |
| 705 | C-13 WINGS | | | 730 |

**Illinois Department of Corrections**
**Roster Management**
Sheridan Correctional Center

Page : 1

Run Date : September 28, 2021

Date : **October 6, 2021**
**Wednesday**
Shift : **15:00 - 23:00**

Approved :

Daily Roster

| Post # | Post Name | CP | Staff Name | Comments |
|--------|-----------|-----|-----------|----------|
| 10 | SHIFT COMMANDER | ** | | |
| 20 | RELIEF SHIFT COMMANDER | | | |
| 100 | LT. ZONE A | ** | | |
| 105 | LT. ZONE B | | | |
| 110 | LT. ZONE C | 1 | | R |
| 135 | RELIEF - LT. | 1 | | |
| 140 | RELIEF - LT | 1 | | 110 |
| 200 | SGT. ZONE A | ** | | |
| 205 | SGT. ZONE B | | | |
| 220 | SGT. C-25 | ** | | |
| 225 | SGT. C-26 | ** | | |
| 230 | SGT. - MAIN GATE | ** | | 234 |
| 231 | SGT. - ARMORY | ** | | 230 |
| 232 | SGT. - SEGREGATION | ** | | |
| 234 | SGT. - HEALTH CARE | ** | | 231 |
| 240 | SGT. - CENTRAL VISITING ROOM | ** | | |
| 245 | SGT. - RELIEF | | | V |
| 250 | SGT. - RELIEF | | | |
| 275 | VIDEO VISIT OFFICER | | | 492@5 |
| 308 | SWITCHBOARD | | | OP AT 7PM |
| 315 | MAIN GATE OFFICER | | | |
| 402 | TOWER 1 | ** | | |

# EXHIBIT

# B

(4) pAge 730 ILCS 5/3-2-2, 05.01.104 Administrative Directive "Use, Security and Storage of Cameras, Digital Media and Related Equipment

| | **Illinois Department of Corrections** | |
| --- | --- | --- |
| | **Administrative Directive** | |
| Number:<br>**05.01.104** | Title:<br>**Use, Security and Storage of Cameras, Digital Media and Related Equipment** | Effective:<br>**12/1/2019** |

| Authorized by: | | |
| --- | --- | --- |
| | *[Original Authorized Copy on File]* | **Rob Jeffreys**<br>Acting Director |
| **Supersedes:** | 05.01.104 effective 01/01/1997 | |

| Authority:<br>730 ILCS 5/3-2-2 | Referenced Policies:<br>01.25.101 | Referenced Forms:<br>DOC 0300 – Search Record/Confiscated Contraband<br>DOC 0434 – Incident Report |
| --- | --- | --- |

## I. POLICY

Each facility shall maintain systems for strict accountability of all cameras, digital media and related equipment to ensure that such materials are only issued to or accessed by authorized personnel, and that all cameras and related equipment are properly and securely stored when not in use.

## II. PROCEDURE

### A. Purpose

The purpose of this directive is to establish a written procedure regarding the use and control of cameras, digital media and related equipment within the Department.

### B. Applicability

This directive is applicable to all facilities, offices and program sites within the Department.

### C. Facility Reviews

A facility review of this directive shall be conducted at least semi-annually.

### D. Designees

Individuals specified in this directive may delegate stated responsibilities to another person or persons unless otherwise directed.

### E. Definitions

Cameras – any acquisition device used to produce or reproduce a photographic, electronic or digitized image including, but not limited to, photograph cameras, video cameras, camcorders or scanners, but not including equipment used in the normal course of business to reproduce documents, such as photocopying machines.

Digital Media - for the purpose of this directive shall include any digital imagery, video or audio recorded by or obtained for the Department including, but not limited to, video recordings of cell extractions or shakedowns, surveillance videos or audio recordings.

Related equipment – any video cassette player, video cassette recorder, video monitor, film, cassette, tape, slide, film or slide projector, or any other equipment used for or with cameras such as batteries, chargers, power packs, lenses, filters, flashes, lights, cables, tripods, cases, bags and straps.

| Number: | | Illinois Department of Corrections | Page **2** of 4 |
|---|---|---|---|
| 05.01.104 | Title: | **Administrative Directive** | |
| | Use, Security and Storage of Cameras, Digital Media and Related Equipment | | Effective: 12/1/2019 |

F. **General Provisions**

1. Cameras and related equipment shall be used only for those purposes authorized by the Chief Administrative Officer (CAO).

   a. Covert or surreptitious use of cameras require the prior verbal authorization of the Director. Only visual recordings may be made.

   b. No sound may be recorded during covert or surreptitious use of cameras except as permitted by State or federal law.

2. Use and storage of body cameras, any digital media obtained from body cameras and all related equipment shall be in accordance with existing procedures.

3. An accurate inventory of all cameras and related equipment shall be maintained by each facility.

4. All cameras and related equipment shall be stored in secure areas when not in use.

5. Documentation of use of cameras and related equipment shall be maintained by each facility. Access to such documentation shall be limited by the CAO.

6. All media maintained by the Department shall be used for official purposes only. Personal or unauthorized use or distribution of media may result in disciplinary action up to and including discharge.

7. Access to digital media containing sensitive or confidential information shall be limited to authorized staff via use of password protection.

8. All work-related digital media residing on personally-owned computers, devices or drives is the property of the Department and may be seized by authorized personnel at any time.

9. Offenders shall not be allowed access to cameras or related equipment except where authorized by the CAO. The CAO may authorize such access while an offender is under direct staff supervision in conjunction with:

   a. Established educational, vocational, industry or print shop programs;

   b. Approved recreational or visiting area photograph programs;

   c. Operation of in-house cable systems or a media center; or

   d. A work assignment in the Bureau of Identification.

10. An annual camera and related equipment usage survey shall be conducted and excess or unused items shall be disposed of in accordance with established property control procedures.

G. **Digital Media Requirements**

1. Digital media shall be retained for two years provided no litigation is pending or anticipated.

2. The Chief Information Officer shall ensure:

   a. Secure storage is available on State networks or cloud space from the Department of Innovation and Technology (DoIT) or other contracted vendor(s);

| | Illinois Department of Corrections<br>Administrative Directive | Page **3** of **4** |
|---|---|---|
| Number:<br>05.01.104 | Title:<br>Use, Security and Storage of Cameras, Digital Media and<br>Related Equipment | Effective:<br>12/1/2019 |

b. Digital media saved to secure storage is routinely backed up using data redundancy backup methods;

c. Record retention guidelines are followed to ensure digital media relevant to active investigations or ongoing litigation are not destroyed; and

d. Industry standard security best practices are applied when possible to all storage options, including compliance with Criminal Justice Information Systems (CJIS) Security Policy.

3. Each CAO shall ensure a comprehensive written policy is established regarding each of the topics covered in this directive.

4. Access to secure storage shall be limited to staff approved by the Chief of Investigations and Intelligence (no designee).

a. The Chief, Deputy Chief and each Commander and Deputy Commander of Investigations and Intelligence shall have access to all secure storage.

b. An Internal Affairs Lieutenant shall have access restricted to only the secure storage pertaining to his or her respective facility.

c. An External Investigator shall have access restricted to only the secure storage or digital media pertaining to his or her assigned cases.

5. All staff with access to secure storage shall familiarize themselves with the facility procedure and have knowledge of basic digital media management including, but not limited to, saving and transferring of files, and record retention and destruction procedures.

6. Any unauthorized disclosure, unauthorized acquisition or other situation where sensitive digital media access has been compromised shall be reported immediately upon discovery to the Chief of Investigations and Intelligence and an Incident Report, DOC 0434, shall be completed.

**H. Saving of Digital Media Files**

1. Internal Affairs staff shall be responsible for downloading all digital media recorded on any device to the appropriate secure storage once received via chain of custody.

a. All staff shall ensure chain of custody has been maintained by completing the Search Record/Confiscated Contraband, DOC 0300.

b. The Tactical Team member responsible for recording the event with the issued camera shall submit the camera or SD card storing the digital media file to the Tactical Team Leader.

c. The Tactical Team Leader shall submit the camera or SD card to the Internal Affairs Lieutenant, who shall mark the camera or SD card as evidence.

2. When downloading digital media to secure storage, Internal Affairs staff shall:

a. Save digital media using the approved file format and naming conventions; and

b. After digital media has been successfully uploaded, delete the digital media from the portable device or drive on which it was originally saved.

| | Illinois Department of Corrections **Administrative Directive** | Page **4** of 4 |
|---|---|---|
| Number: 05.01.104 | Title: Use, Security and Storage of Cameras, Digital Media and Related Equipment | Effective: 12/1/2019 |

**I.    Use of Digital Media by Internal Affairs and Investigations**

    1.    Use of digital media by Internal Affairs and Investigations Unit staff shall be for investigative purposes only.

    2.    A copy of digital media used for investigative purposes shall be saved on a disc or SD card and maintained as an attachment in an Investigative file.

**J.    Requests for Use of Digital Media**

    1.    Digital media shall only be transferred to a requestor via the CMS File Transfer or other FTP-based, secure file transfer site.

    2.    Requests for digital media to be used for training purposes shall be:

        a.    Submitted to the Chief of Investigations and Intelligence and Operations for review and approval (no designee).

        b.    Approved only after determination that no current legal action related to the recorded incident exists.

    3.    Other criminal justice agencies may request digital media.

        a.    Requests shall be in writing and accompanied by a subpoena.

            (1)    The letter of request and the subpoena shall be submitted to the Chief of Investigations and Intelligence.

            (2)    The subpoena shall contain the offender's name and justification for the request and, if available, the offender's identification number.  The request shall also include the applicable telephone numbers involved and specific dates and times.

        b.    The Chief of Investigations and Intelligence shall:

            (1)    Submit the request for legal review.

            (2)    Inform the requesting agencies in writing of the Department's approval or denial.

        **NOTE:** Only the portions of the digital media containing the information requested shall be released.

        c.    Each facility shall maintain a record of all digital media released.  At a minimum, the record shall include:

            (1)    The type of digital media released;

            (2)    The specific information released, for example, date or time of information;

            (3)    The date and to whom the digital media was released; and

            (4)    The date the digital media was returned, if applicable.

        d.    The preparing facility shall notify the Regional Law Enforcement Liaison of the release of digital media for documentation in accordance with Administrative Directive 01.25.101.

EXHIBIT
C

(1) page Sheridan CC Health Care Unit Treatment Sheet
dated 10/14/2021 Physician Order "OJ" C13

State of Illinois Department of Corrections

## Sheridan CC Health Care Unit Treatment Sheet

Patient Name __Mason__   IDOC Number __R04326__   Location __C13__

Year __2021__   Start Date __10/14__   Physician Order __OJ__

(include specific procedure, frequency, duration, end date)

| Indices | | | Time Divisions (date, hour, etc.) | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Daily VS, urine ketone, and ~~EMB~~ WT | | | 10/14 PM | 10/15 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

Initials and Signature _____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

SHE028 (4/2017)

State of Illinois Department of Corrections

## Sheridan CC Health Care Unit Treatment Sheet

Patient Name _Mason, Mickey_     IDOC Number _R04326_     Location _C 13._

Year _2021_     Start Date _10/17_     Physician Order _____

**(Include specific procedure, frequency, duration, end date)**

| Indices | | | Time Divisions (date, hour, etc.) | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TB Test Su. | | 10/19 SW | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| TB read Su | | 10/20 Ømm JM | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

_SW Swnahaser_ —

Initials and Signature

SHE028 (4/2017)

MICKEY MASON #R64236
Lawrence Correctional Center
10930 Lawrence Road
Sumner IL 62466

LEGAL

[LEGAL MAIL]

Prisoner Correspondence
United States District Court
Northern District
219 S. Dearborn Street

Chicago IL 60604

Sent out
1/5/2025





**CERTIFIED MAIL**

9589 0710 5270 1804 4543 55

**RECEIVED**

JAN 14 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT



01/14/2025-2