**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICKEY MASON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-3252 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| WARDEN DONALD TERRY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Mickey Mason arrived at the Sheridan Correctional Center in 2021, in the midst of the pandemic, and was quarantined for two weeks as part of its COVID-19 protocol. His cell had a few problems. A handful of spiders resided in the cell, and they made themselves right at home with some spiderwebs. Black dust covered the cell, and rat feces littered the ground.

Mason encountered electrical problems and plumbing problems, too. The light fixture didn't work, and the toilet didn't flush. It took a few days to fix them. In the meantime, the cell received sunlight through the window, and Mason had access to another toilet in a common area of the facility.

Warden Donald Terry managed the Sheridan facility. After about a week in the cell, Mason spoke to Terry about the problems in his cell. Five days later, Mason was moved to a new cell, and his situation improved.

Mason sued Terry, bringing an Eighth Amendment claim about the conditions of confinement. After discovery, Terry moved for summary judgment.

For the following reasons, the Court grants Terry's motion for summary judgment.

### Non-Compliance with the Local Rules

Before diving in, the Court must address Mason's non-compliance with the Local Rules. The punchline is that Warden Terry complied with the Local Rules, and Mason didn't. So all of Warden Terry's facts are deemed admitted.

Local Rule 56.1 establishes the procedure for filing a motion for summary judgment. The moving party must provide a "statement of material facts that complies with LR 56.1(d) and that attaches the cited evidentiary material." *See* L.R. 56.1(a)(2). That statement of facts must rest on evidence in the record, with user-friendly citations. "Each asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." *See* L.R. 56.1(d)(2).

Local Rule 56.1 also covers how the non-moving party must respond to a statement of facts. *See* L.R. 56.1(b)(2). The response must "consist of numbered paragraphs corresponding to the numbered paragraphs" in the movant's statement of facts. *See* L.R. 56.1(e)(1).

Basically, the Local Rules require the non-movant to respond, paragraph by paragraph, to the facts in the movant's statement of facts. And if the non-movant disagrees with any of the movant's facts, the non-movant must cite evidence in the record to back up his position. The non-moving party can object, too. *See* L.R. 56.1(e)(2). But raw denials and empty statements don't cut it.

An incomplete response to a statement of facts has straightforward consequences. "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *See* L.R. 56.1(e)(3).

On the flip side, the Local Rules allow the non-moving party to add facts to the record by filing a statement of additional material facts. *See* L.R. 56.1(b)(3). The requirements for a

statement of additional facts are basically the same as the requirements for a statement of facts. A party must offer additional facts in discrete paragraphs, with citations to the evidentiary record.

The Local Rules contemplate that the non-moving party will file separate documents. That is, Local Rule 56.1(b) provides that the non-moving party can file (1) a brief; (2) a response to the movant's statement of facts; and (3) a statement of additional facts. *See* L.R. 56.1(b)(3).

Local Rule 56.1(b) gives a list of what the non-movant can file, and the structure of the rule suggests that the filings should be separate documents. At the very least, it should be easy to see which is which. The non-movant shouldn't offer a stew, and blend it all together.

The same consequences apply if the movant doesn't respond to the non-movant's statement of additional facts as contemplated by the Local Rules. Facts in the non-movant's statement of additional facts "will be deemed admitted unless controverted by the statement of the moving party." *See* L.R. 56.1(e)(3).

Warden Terry complied with Local Rule 56.1. He filed a statement of facts in support of his motion for summary judgment. That Rule 56.1 statement includes citations to admissible evidence. *See* Defs.' Statement of Material Facts (Dckt. No. 104). So far, so good.

Mason barely responded Terry's statement of facts. *See* Pl.'s Resp. to Def.'s Statement of Material Facts (Dckt. No. 111). The response spanned only two pages. *Id.* Mason responded to only one of Terry's asserted facts – a statement about residing at the Sheridan Correctional Center – and Mason admitted it. *Id.* at ¶ 1. Mason did not respond to any of the other 60 paragraphs in the 61-paragraph statement of facts. *Id.*

The second page of Mason's response did include three other paragraphs, but it's hard to know what to make of them. Mason jumped from paragraph one (about the Sheridan facility) to

paragraphs three, four, and five.  *See* Pl.'s Resp. to Def.'s Statement of Material Facts, at 2 (Dckt. No. 111).  Those three paragraphs don't match up with the paragraphs in Warden Terry's statement of facts.  Two of the paragraphs are about contracting Covid-19, and the last paragraph is about the lack of cleaning supplies.  Mason doesn't cite anything in the record, either.  So the paragraphs count for nothing.

Summary judgment is the put-up-or-shut-up, smoke-'em-if-you-got-'em, speak-now-or-forever-hold-your-peace time.  *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).  Now's the time to put your cards on the table.

The rules exist for good reason.  Parties must present the record to the district court in a clear, digestible, orderly fashion so that the district court can look at the evidence and ferret out whether there are genuine issues of material fact.  A district court must figure out if there is any *there* there.  *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) ("The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination.  It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact.").

Mason did not respond to 60 of the 61 paragraphs in Terry's statement of facts, and he admitted the other paragraph.  So this Court accepts all of Terry's facts.  When the non-movant "fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."  *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *see also* L.R. 56.1(e)(3).

Mason didn't do any better when it comes to his statement of additional facts.  Mason filed a response brief, and it includes a section heading entitled "Statement of Material Facts."

4

*See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 4 (Dckt. No. 110). That section doesn't look like a statement of additional facts. If Mason intended that section to be a statement of additional facts, and add more facts to the record, he didn't achieve his goal.

A statement of facts must include separate numbered paragraphs, with citations to the record. By way of illustration, the first paragraph might say "Bob drove his car down Lake Share Drive on July 4, 2025," and the second paragraph might say "Bob was speeding while listening to AC/DC," and so on.

That's not what Mason did. His statement of material facts runs for about 10 pages. Six of the paragraphs begin with numbers, but there are plenty of unnumbered paragraphs in between. So, for example, the first paragraph reads: "(1) Plaintiff has a constitutional right to Due Process that's associated with IDOC Department Rules and Administrative Directives regarding Conditions of Confinement." *Id.*

The statement of facts then includes two more paragraphs, which aren't numbered. And then, Mason wrote a new paragraph, which begins with the number two. He wrote: "2. Defendant Donald Terry and counsel forgot that they admitted that Plaintiff was able to speak with him within a few days of his request, when they were trying to get Plaintiff to settle both cases . . . ." *Id.* at 5.

After one more unnumbered paragraph, Mason offers another paragraph that begins with a three. "3. Donald Terry, Sherwin Miles, and 1st shift / 2nd shift John Doe(s) was [sic] aware of the inhumane conditions of confinement that Plaintiff was forced to be housed in due to the cell was suppose [sic] to be searched / checked before Plaintiff was placed in there." *Id.*

The same pattern continued from there. Mason offered three more unnumbered paragraphs, before offering a paragraph that begins with a four. Unnumbered paragraphs follow, and eventually paragraph five appears. And so on.

Several problems jump out. For starters, Mason did not file a freestanding statement of additional facts. He seems to have blended his facts with his brief. The blending and blurring isn't consistent with the Local Rules, and it makes the filing more than a little difficult to follow.

Frankly, it is hard to tell where the facts end, and where the brief begins. Again, the very first paragraph is a good example: "Plaintiff has a constitutional right to Due Process that's associated with IDOC Department Rules and Administrative Directives regarding Conditions of Confinement." *Id.*

That's a legal argument, not a fact. By and large, the content is mostly legal argument, with scattered facts appearing along the way.

What's more, Mason offered scant evidentiary support. Along the way, Mason gave a sprinkling of facts here and there. But many of the statements include no citation to evidence in the record. Mason did cite to a few documents, such as a letter to an attorney during the litigation, but that's not admissible.

The other documents don't move the needle. Examples include the roster management report (Dckt. No. [110], at 18 of 28), the IDOC Administrative Directive (*id.* at 21 of 28), and the IDOC Health Care Unit Treatment Sheet (*id.* at 26 of 28). Mason attached those documents, but didn't cite them in his statement of facts, so it is hard to know what to do with them.

Mason also offered a declaration from an inmate about workers who had Covid-19. *See* Williams Decl. (Dckt. No. 111), but it does not relate to any numbered paragraph in the statement of additional facts.

6

In another spot, Mason's brief cited something called the Jackson declaration, but it has something to do with a hunger strike, with no apparent connection to the claim. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 5 (Dckt. No. 110). And in any event, Mason didn't attach the Jackson declaration, so it's not in the record.

Overall, Mason's statement of facts doesn't comply with the Local Rules. He didn't file a freestanding document that includes discrete paragraphs with specific facts supported by citations to the record. Mason did not present his facts in a manner that complies with the Local Rules. So, his statement of facts isn't part of the summary judgment record.

Putting it all together, Terry complied with the Local Rules, and Mason didn't. Mason did not respond to Terry's statement of facts (except for admitting the first paragraph), so all of Terry's facts are deemed admitted. On the other hand, Mason didn't offer any additional facts in a manner that complies with the Local Rules.

All of this is a long way of making a simple point. Terry's facts are in, and Mason's facts are out.

## Background

On October 6, 2021, Mickey Mason arrived at the Sheridan Correctional Center. *See* Def.'s Statement of Material Facts, at ¶¶ 1, 4 (Dckt. No. 104). He spent two weeks in quarantine as part of the COVID-19 protocol, and he resided in cell 23 in C-13 B Hall. *Id.* at ¶¶ 4–6. He relocated to a different cell on October 20. *Id.* at ¶ 18.

Mason's original cell had a few problems. The cell was ill-equipped with lighting and plumbing. *Id.* at ¶ 8. But the cell was well-equipped with spiders, spiderwebs, black dust, and rat feces. *Id.*

Mason saw spiders by the window and by the bed. *Id.* at ¶ 25. He saw six spiders, give or take, and killed them all. *Id.* at ¶ 26. He didn't see any spiders after that. *Id.*

Before their untimely demise, the spiders made themselves at home, making webs by the window and under the bed. *Id.* at ¶ 27. And they minded their own business. Mason testified that the spiders and spiderwebs didn't affect him. *Id.* at ¶¶ 28, 49.

Black dust was all over the cell. *Id.* at ¶ 19. Mason got a dry cough from the black dust. *Id.* at ¶ 23. But he never asked to see a doctor about the dry cough. *Id.* at ¶ 24; *see also* Pl.'s Dep. Tr., at 16:7-9 (Dckt. No. 104-1). Mason's cellmate never got sick from the black dust or anything else. *See* Pl.'s Dep. Tr., at 29:16 – 30:15.

Rat feces were on the ground. *See* Pl.'s Dep. Tr., at 17:20-23 (Dckt. No. 104-1). But the rat feces didn't make Mason sick or otherwise injure him. *See* Def.'s Statement of Material Facts, at ¶ 29 (Dckt. No. 104); *see also* Pl.'s Dep. Tr., at 23:16-24.

The light in the cell didn't work. *See* Def.'s Statement of Material Facts, at ¶ 34 (Dckt. No. 104). But the cell did include a window that faced outside, so sunlight did shine through. *Id.* at ¶ 36. A second window faced the hallway, and light from the hallway came into his cell. *See* Def.'s Decl., at ¶ 11 (Dckt. No. 104-2). The lack of a working light fixture in the cell made it harder for Mason to do legal work. *See* Def.'s Statement of Material Facts, at ¶ 35.

The broken light fixture didn't stay broken for long. An electrician fixed the light on October 12. *Id.* at ¶ 38. So Mason spent only six days in the cell without a working light.

The toilet in the cell didn't flush. *Id.* at ¶ 39. So, Mason used the toilet without flushing for a few days. *Id.* at ¶¶ 40–41. Mason also had other bathroom options. During the entire two-week period, Mason had access to an outside toilet in the day room. *Id.* at ¶ 42.

The toilet, like the light fixture, didn't stay broken for long. Plumbers fixed the toilet on October 12, the same day that the electrician fixed the light. *Id.* at ¶ 44. In total, he couldn't flush the toilet in his cell for six days.

Mason didn't get to shower every day. He arrived on October 6, and he wasn't able to shower until roughly October 10, four days later. *Id.* at ¶ 15; *see also* Pl.'s Dep. Tr., at 20:12-23 (Dckt. No. 104-1).

During Mason's fourteen-day stint in the cell, Donald Terry was the Senior Public Service Administrator Operations Warden at Sheridan. *See* Def.'s Statement of Material Facts, at ¶ 12 (Dckt. No. 104). It was Terry's responsibility to manage and direct the general affairs of the Sheridan facility. *See* Pl.'s Resp. in Opp. to Def.'s Mtn. for Summ. J., at 11 (Dckt. No. 110).

Mason went on a hunger strike for a few days to protest his problems. *Id.* at 5. It lasted until October 15, when Terry came to speak with Mason about his cell. *See* Def.'s Statement of Material Facts, at ¶ 13 (Dckt. No. 104). At that meeting, Mason complained about the conditions of the cell, and raised a few other complaints. *Id.* at ¶ 15. Terry responded that everything would be handled.[1] *Id.* at ¶ 16.

Mason and Terry didn't speak again between October 15 and October 20. *Id.* at ¶ 17. On October 20, less than a week after meeting with Terry, Mason was moved to a different cell. *Id.* at ¶ 18. He didn't have problems in the new cell. *Id.*; *see also* Pl.'s Dep. Tr., at 6:24 – 7:4 (Dckt. No. 104-1).

---

[1] As an aside, Warden Terry denies that any such meeting with Mason ever took place. According to him, he didn't patrol the floor during that time period because of the pandemic. *See* Def.'s Statement of Material Facts, at ¶ 14 (Dckt. No. 104). But this Court will construe the record in Mason's favor, given that he is the non-movant.

A few months later, in January 2022, Mason contracted COVID-19. *See* Def.'s Statement of Material Facts, at ¶ 54 (Dckt. No. 104). Mason testified that he developed COVID-19 because of his stay three months earlier in cell 23. *Id.*

Mason also testified that he wrote a letter to Terry. *Id.* at ¶ 56. But he doesn't know when he sent it. *Id.* at ¶ 58. And he doesn't know whether Terry ever received or read the letter. *Id.* at ¶ 57.

Mason later filed a one-count complaint against Terry, alleging that the conditions of confinement constituted cruel and unusual punishment under the Eighth Amendment. *See generally* Cplt. (Dckt. No. 6). After discovery, Terry moved for summary judgment. *See generally* Def.'s Mtn. for Summ. J. (Dckt. No. 102).

<strong>Legal Standard</strong>

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the non-moving party, giving the non-moving party the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or

determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## Analysis

The Eighth Amendment prohibits "cruel and unusual punishment." *See* U.S. Const. amend. VIII. Both of the adjectives – "cruel" and "unusual" – reflect the height of the standard. Discomfort is not the same thing as cruelty, and run-of-the-mill discomforts aren't unusual.

"[T]he Constitution does not mandate comfortable prisons." *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison is not a Comfort Inn.

One of the many inherent discomforts of prison is the level of cleanliness. Any communal living space comes with cleanliness issues, and that's especially true for correctional facilities. Prisons pose special challenges when it comes to cleanliness, given the large number of people confined to tight spaces over long stretches of time.

"The Constitution does not require a visit by Mr. Clean himself." *Harris v. Cnty. of Cook*, 2024 WL 1702678, at *9 (N.D. Ill. 2024). A prison doesn't have to be as clean as a hotel, let alone a home. *See Perry v. Reagle*, 2024 WL 958009, at *10 (S.D. Ind. 2024) (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)) ("[I]nmates cannot expect the cleanliness of a prison to match that of a 'good hotel.'"); *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994) ("The Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons."); *Downs v. Carter*, 2016 WL

1660491, at *10 (N.D. Ill. 2016) (quoting *Jordan v. Peters*, 2000 WL 149256, at *4 (N.D. Ill. 2000)) ("[T]he hygienic conditions in a prison [need] not meet the prisoner's personal standards of cleanliness.").

But the Eighth Amendment does require prison officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *See Farmer*, 511 U.S. at 832.

Prison staff violate the Eighth Amendment when they are "deliberate[ly] indifferen[t] to a substantial risk of serious harm to an inmate." *Id.* at 828. The deliberate indifference standard includes "both an objective and subjective component." *See Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021); *see also Farmer*, 511 U.S. at 834.

The objective component requires a prisoner to show that the conditions were sufficiently serious. That is, the prisoner must show that the defendants "den[ied] the inmate 'the minimal civilized measure of life's necessities,' creating an excessive risk to the inmate's health and safety." *See Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (internal citation omitted) (quoting *Rhodes*, 452 U.S. at 347). The question is not whether the conditions met the expectations of a particular inmate. The question is whether the conditions were objectively bad.

The subjective component requires a prisoner to show that prison officials acted with deliberate indifference. The prisoner must show that they knew about and disregarded an excessive risk of harm to the inmate. *See Farmer*, 511 U.S. at 834; *see also Thomas*, 2 F.4th at 720.

Terry argues that Mason has failed to carry his burden on either prong, let alone both of them. The Court agrees.

12

## I.      The Conditions of Confinement

For starters, Mason has failed to come forward with sufficient evidence that the conditions of confinement deprived him of life's necessities.

The pests in Mason's cell didn't rise to the level of a constitutional violation. On this record, no reasonable jury could find an Eighth Amendment problem.

The Constitution does not guarantee a pest-free cell. Pests, after all, have pestered humans since time immemorial. Spiders and rodents sometimes visit people's homes, too.

The presence of pests might give rise to an Eighth Amendment claim, depending on the level of the infestation. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015). The Eighth Amendment may not require a biblical plague. But if a flyswatter and a broom can fix the problem, it's probably not a constitutional problem.

Mason testified that he saw six spiders. The record doesn't reveal what type of spiders they were, but the Prairie State isn't known for its venomous arachnids. He shared a cell with six spiders, not six cobras.

The spiders weren't venomous, and posed no special health risks. It is not as if Mason's cell was crawling with black widows, or brown recluse spiders. They didn't bite him, and he suffered no adverse health effects. They also didn't crawl all over him for days on end, driving him nuts.

In the end, the spiders were no match for Mason. He swatted the spiders, and the spiders met their Maker. They didn't come back. The spiders, it seems, had more to fear from Mason than Mason had to fear from them. If anything, Mason posed a substantial risk of serious harm to the spiders, not the other way around. Mason 6, Spiders 0.

13

Mason testified that he saw rat feces in his cell, but he never saw any rats. No one wants to be around rat feces. But the mere presence of rat feces, standing alone, is not a constitutional violation. Mason must show that the feces created an "excessive risk to the inmate's health and safety." *See Isby*, 856 F.3d at 521.

Mason has made no such showing. In fact, Mason testified that he had no adverse effects from the rat feces. *See* Def.'s Statement of Material Facts, at ¶ 29 (Dckt. No. 104).

From time to time, the Seventh Circuit has given the greenlight to Eighth Amendment claims based on the presence of pests. But in those cases, the situation was much more dire, and a lot more extreme.

Consider, for example, the situation in *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996). There, an inmate alleged that cockroaches "were everywhere, crawling on his body (along with mice) and constantly awakening him" for "sixteen months." *Id.* at 1431 (internal quotation marks omitted). The Seventh Circuit held that spending more than a year smothered with creepy crawlies was enough to give rise to a claim.

In *White v. Monohan*, 326 F. App'x 385 (7th Cir. 2009), the Seventh Circuit addressed an inmate who was swarmed with "bugs, roaches, spiders, wasps, [and] bees." *Id.* at 388. The insects were decidedly unfriendly. They left "multiple scars, wounds, and sores, causing . . . internal injuries" for "over five years." *Id.* The Seventh Circuit held that the swarm raised a potential Eighth Amendment problem. But even then, it was a "close case." *Id.*

Mason didn't encounter anything similar. At worst, Mason's cell had some pests (spiders and rats) and their byproducts (webs and feces). But the volume was far short of an infestation. The spiders and rats never touched him, let alone touched him for long periods of time.

14

Simply put, the record does not "approach the severity of the conditions that [the Seventh Circuit] considered a 'close case.'" *See Smith*, 803 F.3d at 312. A few spiders and some rat feces might spoil a picnic, but they don't run afoul of the Constitution.

The lack of an electrical light did not deprive Mason of the basic standards of civilization, either. It is not as if Mason sat in the darkness for weeks or months on end. He didn't have artificial light coming from a light fixture inside his cell. But he did have natural light. His cell had a window, and the Sun never stops shining.

Mason's cell also had a second window, facing the hallway. Light from the hallway came into his room.

Mason wasn't in the dark. The two windows tag-teamed, giving Mason the benefit of natural and artificial light from two directions outside his cell. Plus, an electrician fixed the light fixture in his cell after only six days.

Modest deprivations of light do not give rise to an Eighth Amendment claim. *See, e.g.*, *Lloyd v. Briley*, 2007 WL 917385, at *6 (N.D. Ill. 2007) (reasoning that where the plaintiff had windows to let light into his cell, "the lack of a light in his cell fails to fall so far below minimum standards as to violate the Eighth Amendment"); *Wilson v. Schomig*, 863 F. Supp. 789, 795 (N.D. Ill. 1994) ("However, his only complaint about this cell is its lack of operating electrical lights. Without an allegation of more – such as total light deprivation – we find that inadequate lighting does not so offend the evolving standards of decency that mark the progress of a maturing society.") (internal quotation marks omitted); *see also Ybarra v. Neal*, 2021 WL 5741328, at *2 (N.D. Ind. 2021) ("The mere allegation that [the plaintiff] didn't have a working light in his cell for a little more than two weeks doesn't state a claim on which relief can be granted.").

15

The black dust did not violate the Eighth Amendment, either. For one thing, the record doesn't reveal what, exactly, the black dust was. Presumably it was dirt or residue of some kind. Nothing in the record suggests that the dust was toxic.

Prisons aren't pristine places, and the Constitution doesn't require them to be dirt-free. There is case law about access to cleaning supplies, but that's not at issue here. When he asked for cleaning supplies, Mason received a spray bottle of water and a mop with water. *See* Def.'s Statement of Material Facts, at ¶ 20 (Dckt. No. 104). Even then, Mason made no effort to clean his cell. *Id.* at ¶ 22.

Particulates can cause serious health problems. But cases that recognize Eighth Amendment claims based on particulates are few and far between. They tend to involve extreme exposures to toxic substances.

A good example is *Board v. Farnham*, 394 F.3d 469 (7th Cir. 2005). There, the Seventh Circuit addressed long-term exposure to black fiberglass dust, a dangerous substance. The inmate endured exposure for 126 days – more than four months. He suffered daily nosebleeds and severe respiratory problems that led to hospitalization. *Id.* at 486. "Cases in which courts have applied *Board* typically involved allegations of similar *long-term* exposure and *long-term* harm." *See Rivers v. Paulsen*, 2024 WL 3273794, at *4 (E.D. Wis. 2024).

Mason didn't come forward with evidence that the black dust posed a substantial risk of serious harm. *See* Def.'s Statement of Material Facts, at ¶ 48 (Dckt. No. 104). He was in the cell for only 14 days. That's a modest exposure, to put it mildly.

Mason offered no evidence that the black dust posed much of a danger, let alone a substantial risk of serious harm. Mason did experience a dry cough, and he believes that the

16

black dust was to blame. *Id.* at ¶ 23. But the dry cough wasn't particularly serious. It wasn't even serious enough for Mason to seek medical attention. *Id.* at ¶ 24.

Unlike the inmate in *Board*, who was "hospitalized and put on a breathing machine," Mason merely coughed. *See Board*, 394 F.3d at 486. Without any "evidence of serious injury, [Mason's claim] does not amount to constitutional deprivation." *See Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008).

Mason points out that he got COVID-19 three months after leaving the cell. But nothing in the record suggests that the coronavirus was lurking in the black dust. That virus also doesn't have a three-month incubation period in the human body.

And in any event, the Constitution does not require prisons to eliminate any and all exposure to viruses that might lead to an infectious disease. The Eighth Amendment does not guarantee that prisons will be COVID-19-free. The Eighth Amendment does not demand that prisons have the same level of cleanliness and sterilization as an operating room.

Mason also experienced some plumbing problems, which aren't uncommon in prisons and jails. Water is one of the keys to civilization, and the lack of access can give rise to an Eighth Amendment problem. "Adequate food and facilities to wash and use the toilet are among the 'minimal civilized measure of life's necessities.'" *See Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012) (quoting *Rhodes*, 452 U.S. at 347). But it's asking a lot to find a constitutional violation based on plumbing problems.

The plumbing problems in Mason's cell did not come close to a constitutional violation. The toilet in Mason's cell couldn't flush for a few days. But a plumber fixed it six days later. And in the meantime, the toilet didn't overflow. *See* Def.'s Statement of Material Facts, at ¶ 41 (Dckt. No. 104). Things weren't going down, but things weren't coming up, either.

17

That toilet wasn't the only option. Mason had access to a toilet in a common area that worked like a charm. At worst, Mason experienced a modest inconvenience when it came to indoor plumbing. His internal plumbing had access to indoor plumbing.

The shower situation passed constitutional muster, too. Mason didn't shower for a few days at a time. But "limiting inmates to weekly showers does not violate the Eighth Amendment." *See Jaros*, 684 F.3d at 671. Mason has made no showing of a risk to his health, either. *See* Def.'s Statement of Material Facts, at ¶ 33 (Dckt. No. 104).

In the end, Mason was able "to use the toilet and showers." *See Jaros*, 684 F.3d at 671. He didn't lack access to "life's necessities," so he has no claim. *Id.*

Viewed as a whole, the conditions in Mason's cell may have been uncomfortable. But they passed constitutional muster, by a comfortable margin.

## II. Deliberate Indifference

The second part of a conditions-of-confinement claim is the subjective component. Mason must come forward with evidence showing that Terry was indifferent to his plight. Once again, the question isn't a close one.

The record does not come close to showing that Terry was deliberately indifferent to Mason's situation. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *See Farmer*, 511 U.S. at 835. There is no evidence that Terry was "aware of [Terry's] condition and knowingly disregarded it." *See Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015).

Quite the opposite. Mason reached out to Warden Terry on October 15 and voiced concerns about the conditions in his cell. Less than a week later, Mason got a new cell. He relocated on October 20.

That's the opposite of indifference. The evidence reveals that the prison listened to the problem and found a solution in a matter of days. "Non-medical prison officials are not deliberately indifferent to a prisoner's serious medical needs when the officials respond readily and promptly to the prisoner's complaints . . . ." *See Guyton v. Taybron*, 2020 WL 1027886, at *3 (N.D. Ill. 2020) (Lee, J.) (internal quotation marks omitted).

The reasonableness of the response time partly depends on the severity of the problem. A more serious problem demands a faster response time, and vice versa. If anything, relocating Mason to a new cell in five days was a blaze of speed, given that the problems were on the low end of the seriousness spectrum. And by the time that Mason spoke with Terry (on October 15), the prison has already fixed the toilet and the light fixture (on October 12).

The response was especially fast given Terry's other duties as the Warden. Terry had responsibilities that included managing the day-to-day operations of the entire Sheridan facility. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 11 (Dckt. No. 110).

It makes no difference if other prison officials could have responded more quickly. Warden Terry can't have liability simply because of his supervisory role. Section 1983 requires personal responsibility, and does not permit claims based on *respondeat superior*. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015); *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012). A supervisor is responsible for his own actions and inactions, and is not liable for the conduct of his underlings.

On this record, no reasonable jury could conclude that Warden Terry showed deliberate indifference to the conditions in Mason's cell. If anything, it looks like the squeaky wheel received disproportionate grease.

**Conclusion**

For the foregoing reasons, Defendant Terry's motion for summary judgment is hereby granted.

Date:  September 18, 2025

_____

Steven C. Seeger
United States District Judge

20